**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 30 2013, 8:56 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**AMY KAROZOS**
Greenwood, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Office of the Indiana Attorney General
Indianapolis, Indiana

**CHRISTINE REDELMAN**
Deputy Attorney General
Indianapolis, Indiana

**PATRICK M. RHODES**
Indiana Department of Child Services
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION | ) | |
| OF THE PARENT-CHILD RELATIONSHIP | ) | |
| OF D.M. (Minor Child) and D.D. (Father), | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No.  49A05-1305-JT-258 |
| | ) | |
| THE INDIANA DEPARTMENT OF CHILD | ) | |
| SERVICES, | ) | |
| Appellee. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn A. Moores, Judge
The Honorable Larry E. Bradley, Magistrate
Cause No. 49D09-1301-JT-3286

**December 30, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

D.D. ("Father") appeals the termination of his parental rights upon the petition of the Marion County Department of Child Services ("the DCS"). Father presents the sole issue of whether the DCS established, by clear and convincing evidence, the requisite statutory elements to support the termination decision. We affirm.

## Facts and Procedural History

On May 10, 2011, the DCS filed a petition alleging that D.M. and her younger siblings were Children in Need of Services ("CHINS") because J.M. ("Mother") was homeless and had been arrested, leaving no one to care for the children.[1] The DCS alleged that D.D., the father of D.M. but not her younger siblings, had not successfully demonstrated the ability and willingness to appropriately parent D.M. Father did not appear at the initial hearing. He appeared at a pretrial hearing and was appointed counsel; a denial of the allegations was entered on Father's behalf. Father was granted visitation. After Mother reported that Father had seen D.M. only once in the preceding six months, the juvenile court ordered that Father's visitation be supervised.

---

[1] Mother is not an active party to this appeal.

On August 2, 2011, D.M. was adjudicated a CHINS, based upon the mother's admissions. A dispositional hearing as to Father was scheduled for August 30, 2011. Father did not appear and Father's counsel reported that she had attempted to communicate with Father but had received no response. She had sent Father a letter anticipating withdrawal of representation. On September 20, 2011, the juvenile court authorized the withdrawal of Father's court-appointed counsel.

On September 27, 2011, at a dispositional hearing at which Father failed to appear, the trial court ordered that D.M. remain in foster care and entered a participation decree ordering Father to participate in services. Father was ordered to contact the case manager weekly, notify the case manager of any arrest, maintain suitable housing and income, participate in home-based counseling, complete a substance abuse assessment, submit to random drug screens, and attend all scheduled visits with D.M.

Father participated in "about five" visits. (Tr. 20.) On February 14, 2012, the juvenile court found that Father was not engaging in services. On October 25, 2012, the plan for D.M. was changed from reunification to adoption, after DCS reported a lack of contact with Father. However, on November 7, 2012, the plan for D.M. was changed from adoption to reunification. On January 15, 2013, Father failed to appear at a permanency hearing. DCS reported that Father was incarcerated and not participating in services. The plan for D.M. was again changed to adoption.

On January 28, 2013, the DCS filed a petition to terminate Mother's and Father's rights. On April 16, 2013, Father was appointed counsel to represent him in the termination

3

proceedings. A hearing was conducted on April 29, 2013. On May 7, 2013, the juvenile court issued an order terminating Father's parental rights. He now appeals.

**Discussion and Decision**

*A. Standard of Review*

Our standard of review is highly deferential in cases concerning the termination of parental rights. In re K.S., 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). This Court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. In re A.A.C., 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, we neither reweigh the evidence nor judge the credibility of the witnesses. Id. We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. Id.

*B. Requirements for Involuntary Termination of Parental Rights*

Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. In re L.S., 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), trans. denied.

Indiana Code section 31-35-2-4(b)(2) sets out the elements that the DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

(A) that one (1) of the following is true:

4

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

5

> (iii) The child has, on two (2) separate occasions, been adjudicated a
>
> child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

If the court finds that the allegations in a petition described above are true, the court shall terminate the parent-child relationship. I.C. § 31-35-2-8(a). A trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied. The trial court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." Id.

### C. Analysis

Father contends that insufficient evidence supports the termination order. He does not challenge the trial court's determinations pursuant to Sections 31-35-2-4(b)(2)(A) (removal from parent), or (D) (satisfactory plan). He challenges the determination relating to Sections 31-35-2-4(b)(2)(B) (reasonable probability conditions will not be remedied or relationship poses a threat to child's well-being) and (C) (best interests).

Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, and therefore the court needed only to find that one of the three requirements of subsection (b)(2)(B) had been established by clear and convincing evidence. See L.S., 717 N.E.2d at 209. Because we find it to be dispositive under the facts of this case, we consider only whether the DCS established, by clear and convincing evidence, that there is a reasonable probability that the

6

conditions resulting in the removal or reasons for placement outside the home will not be remedied. See I.C. § 31-35-2-4(b)(2)(B)(i). The relevant statute does not simply focus on the initial basis for removal for purposes of determining whether a parent's rights should be terminated, "but also those bases resulting in the continued placement outside the home." In re A.I., 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), trans. denied.

Initially, the DCS intervened and removed D.M. because Mother was homeless and facing incarceration and was thus not providing an appropriate home and supervision for D.M. At that time, Father had experienced limited contact with D.M. and had not demonstrated his ability to provide for her needs. Father contends that these conditions were primarily attributable to Mother. Nonetheless, the continued placement of D.M. in foster care was also due to Father's incarceration and non-compliance with services.

In Father's estimation, he was present for "maybe five" supervised visits with D.M. (Tr. 20.) However, he grew frustrated with the confines of supervision and advised a DCS caseworker in August of 2011 that he was "done with this shit." (Tr. 51.) At the termination hearing, Father recalled that his last contact with his child had been "probably almost a year [ago] maybe." (Tr. 105.)

Father was arrested in November of 2012 and was charged with dealing in cocaine. At the termination hearing, he testified that he had reached a plea agreement with the State on the sole charge of possession of cocaine and that he anticipated receiving a term of probation at his upcoming sentencing hearing. Father was at that time living at his mother's residence with several siblings and was working part-time at a fast food restaurant.

Father did not participate in home-based services. Mail from DCS to Father was returned and he did not keep in contact with a caseworker or advise of a current address. He also failed to maintain contact with court-appointed counsel. Prior to the filing of the termination petition, Father had missed several court dates. Father had not complied with the juvenile court's order that he complete a drug assessment. Indeed, at the termination hearing, he admitted that, if a drug screen were administered, he would test positive for marijuana.

Father claims that he has consistently paid child support and saw his child when she was in Mother's care. He points to evidence that he was incarcerated for only twelve weeks during the pending CHINS proceedings and denies having a substance abuse problem. In essence, Father asks that we reweigh the evidence and accord greater weight to his testimony of his efforts and future aspirations. We will not do so. See In re A.A.C., 682 N.E.2d at 544. The DCS presented clear and convincing evidence from which the trial court could conclude that there was a reasonable probability that the conditions resulting in the removal or reasons for placement outside the home would not be remedied.

As for D.M.'s best interests, Father makes no separate argument in this regard. Nor does he challenge any finding of fact as unsupported by the evidence. In determining what is in a child's best interests, the trial court is required to look beyond the factors identified by the DCS and consider the totality of the evidence. In re J.S., 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). Here, the trial court's findings included the following: the home-based provider attempted to reach Father for 30 days without success; the family case manager could not reach Father and had no contact with him between August of 2011 and November of 2012;

the substance abuse assessment and drug screens were never conducted; Father became frustrated with the proceedings and advised the case manager that he was "done with this shit"; Father did not attend a CHINS hearing after August 2, 2011, until April 16, 2013; Father's lack of a relationship with his child was apparent to the visitation supervisor; Father has a history of illegal substance use; Father had recently been charged with drug offenses and was awaiting sentencing; during the pendency of the CHINS proceedings, Father had demonstrated an inability or unwillingness to parent; and D.M. – a special needs child – was thriving in foster care. These findings of fact adequately support the conclusion that termination of Father's parental rights was in D.M.'s best interests.

## Conclusion

The DCS established by clear and convincing evidence the requisite elements to support the termination of parental rights.

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.

9